JUDGE GRIESA



10 CV 8997

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Sol Biderman, Individually, and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>vs.<br><br>KABA ILCO CORP., KABA CORPORATION, KABA FINANCE CORPORATION, KABA BENZING AMERICA, KABA U.S. HOLDING LTD., KABA DELAWARE, LLC, KABA AG, and KABA HOLDING AG<br>          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

RECEIVED
DEC 0 2 2010
U.S.D.C. S.D. N.Y.
COMPLETED

### INTRODUCTION

1.      This is a nationwide class action on behalf of individuals and business owners who seek compensatory damages, restitution and disgorgement of all profits gained by Defendants arising out of the sale of push button door locks that were designed, manufactured, marketed and sold by Defendants, which contained defects in design that made them susceptible to opening by use of various commercially available magnets, rendering the locks ineffective and unfit to perform the safety function for which they were designed. Each of the aforementioned locks manifests the design defect at the present time. As a result of the defects in design, the locks must be replaced.

2.      Plaintiffs also seek remedies for Defendants' failure to adequately notify customers of the defects. Finally, Plaintiffs seek to enjoin Defendants from continuing to engage in the marketing and sale of the defective locks.

3.     Plaintiffs, for themselves and all others similarly situated, brings this action pursuant to New York Deceptive Sales Practices Act, N.Y. Gen. Bus. § 349 and all 49 other State Consumer Statutes; Common Law Fraud; Negligence, Strict Products Liability, Failure to Warn, Breach of Warranty, Negligent Misrepresentation, Violation of Magnuson-Moss Warranty Act, and Unjust Enrichment.

## I.     PARTIES

### Plaintiffs

4.     Plaintiff Sol Biderman is a citizen of the State of New York, County of Rockland.

### Defendants

5.     Kaba Ilco Corp. ("KABA") is a corporation organized under the laws of the state of North Carolina, with offices at 400 Jeffreys Road, Rocky Mount, North Carolina 27804.

6.     KABA is a wholly owned subsidiary of Kaba Corporation.

7.     Kaba Corporation, a corporation existing under the laws of the state of Connecticut with its principal place of business located at 400 Jeffreys Road, Rocky Mount, North Carolina 27804, is a wholly owned subsidiary of Kaba Finance Corporation.

8.     Kaba Finance Corporation, a corporation existing under the laws of the state of Delaware with its principal place of business located at 1201 North Market Street, Wilmington, Delaware 19801 is a wholly owned subsidiary of Kaba Benzing America.

9.     Kaba Benzing America a corporation existing under the laws of the state of Florida with its principal place of business located at 3015 North Commerce Parkway, Miramar, Florida 33025 is a wholly owned subsidiary of Kaba U.S. Holding Ltd.

10.     Kaba U.S. Holding Ltd., a foreign corporation existing under the laws of the United Kingdom, is jointly held by Kaba Delaware, LLC and Kaba AG.

11.     Kaba Delaware, LLC, a limited liability corporation existing under the laws of the

2

state of Delaware with its principal place of business located at 1201 North Market Street, Wilmington, Delaware 19801 is a wholly owned subsidiary of Kaba AG.

12.     Kaba AG, a corporation existing under the laws of Switzerland with its principal place of business located at Muhlebuhlstrasse 23, Kempten, 8623 Wetzikon, Switzerland, is a wholly owned subsidiary of Kaba Holding AG.

13.     Kaba Holding AG is a publicly owned corporation existing under the laws Switzerland with its principal place of business located at Hofwisenstrasse 24, CH-8153, Ruemlang, Switzerland.

14.     The corporate structure referenced in ¶¶ 5-13 will hereinafter be refered to as the "Kaba Group".

15.     The Kaba Group describes itself as the world's number-one producer of key blanks, key-cutting machines, transponder keys, and high-security locks. The Kaba Group is also one of the world's leading providers of electronic access systems, locking systems, hotel locks, security doors, and time recording systems.

16.     The Kaba Group and KABA d/b/a Kaba Access Control manufactures sells and markets the Simplex and Unican lines of locks.

17.     KABA access systems consist of mechanical as well as mechatronic high security cylinders and locks ranging from those for use in "the private home" to those intended to service sophisticated high security installations such as banks or classified government sectors.

18.     KABA's traditional sales channels for locks and cylinders include locksmiths, hardware and security shops, which are generating growing sales with electronic access control components and solutions.

19.     KABA is the market leader in the domain of mechanical pushbutton locks that are

very popular in North America and United Kingdom. Instead of inserting a key, users enter a numeric code to open these locks. Authorization is checked on a purely mechanical basis. Because they require neither keys nor electric power, pushbutton locks are particularly suitable for convenient access control solutions.

20.     KABA is the leader in the Mechanical Pushbutton Lock (PBL) segment of the access control market. Over a period of forty years, PBLs have evolved to become the industry standard for "keyless entry" in standalone locks and are available in three categories; Primary, Auxiliary and Specialty.

21.     Primary PBLs are heavy-duty commercial grade and are often found in institutional heavy-use environments such as universities, airports, hospitals, and government buildings.

22.     Auxiliary PBLs are used in conjunction with a primary lock and are typically found in light commercial or industrial low-use, less demanding applications and private residences.

23.     Specialty PBLs are most common in original equipment manufacturer ("OEM") lock applications such as cabinets or toolboxes, gun safes and medical carts.

24.     All PBLs offer keyless entry and the dependability of an all-mechanical product, reliable exterior use performance and easy convenient changing of combinations without disassembly or removal from the door.

25.     According to representations made by KABA and the Kaba Group, in 2001, through the acquisition of Unican Security Systems Ltd., Toronto, KABA became:

> a.  The number one manufacturer and seller of key blanks, key encoding machines and transponder keys (Ilco and Silca);

b. The number one manufacturer and seller of high-security vault and container locks (Ilco, Kaba Mas, Kaba Mauer and Paxos);

c. The number one manufacturer and seller of electronic access solutions in Europe;

d. The number one manufacturer and seller of locking systems;

e. The number one manufacturer and seller of security and automatic doors;

f. The number one manufacturer and seller of hotel lock systems;

g. The number one manufacturer and seller of Total Access Systems.

26.     KABA was and is aware that in North America, the industry is strongly influenced by the potential for legal action on the grounds of liability, and escape facilities are vitally important for building owners. Further, KABA is, and was, aware that required standards for locks and security products have gradually been raised and the spending per capita on lock and security products in these markets is the highest in the world.

## II.     JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists.

28.     Venue is proper in this District under 28 U.S.C. § 1391(a) because plaintiffs reside within it and Defendants have caused harm to class members residing in this District.

## III.    STATEMENT OF FACTS

29.     Defendants are involved in the business of designing, manufacturing, marketing and selling mechanical pushbutton locks. The locks are installed on doors and require the user to input the appropriate combination in order to open the lock.

30.     Defendant, Kaba Ilco Corp., with offices at 2941 Indiana Avenue Winston Salem, NC 27105 has a history that dates back to 1862 when Franz Bauer established his locksmithing and safe building company, Kassa Bauer (translated Bauer Safe). The Kaba name is a contraction of Kassa Bauer.

31.     In 1961, the company Simplex was founded and began producing push button locks.

32.     Simplex was subsequently purchased by the Canadian-based company Unican Security Systems, Ltd. ("Unican").

33.     Unican Security Systems, Ltd. operated under the name Simplex-Unican.

34.     Thereafter, the Independent Lock Company, ILCO, was purchased by Unican and for a period of time the locks were known as Ilco-Simplex.

35.     In 1978, KABA entered the U.S. market by establishing Kaba High Security Locks Corporation in Southington, Connecticut.

36.     In 2001, KABA acquired Unican Security Systems Ltd., which included Ilco keys and Simplex mechanical pushbutton locks, as well as various electronic access control products. Unican pioneered the pushbutton lock, introducing the first mechanical pushbutton lock in 1964.

37.     In or about July of 2005, Kaba High Security Locks Corporation was formally dissolved.

38.     Kaba High Security Corporation now operates under the name Kaba Corporation, a Connecticut corporation.

39.     Defendants represent that with over 145 years of experience, the Kaba Group is one of the oldest and largest suppliers of access control products in the world. The Kaba Group has approximately 10,000 employees with operations in over 60 countries.

40.     Kaba Access Controls is based in Winston-Salem, North Carolina, and offers a diversified product line of access control solutions. With Peaks patented key control systems, Simplex mechanical pushbutton locks and E-Plex electronic access control products, Kaba Access Control offers a solution for every door and every budget.

41.     Kaba Ilco represents that it a leading provider of Mechanical and Electronic Access Control solutions with an extensive line of electronic Hotel Locks, Keyless Locks, Key Blanks, Key Cutting Machines, Specialty Locks and Cylinders.

42.     At all times relevant KABA markets the Simplex line of locks as a security device.

43.     Defendants represent that the Simplex line of mechanical pushbutton locks offer a convenient way to control access between public and private areas.

44.     Defendants represent that "Kaba's complete line of Simplex® light commercial and *residential locks provide the same added security features you find in our complete line of heavy-duty locks*".

45.     Defendants extol such features as "no keys or cards to manage, no computers to program, no batteries to replace, and combinations can be changed in seconds without removing the lock from the door."

46.     Defendants advertise and market to the consuming public that the Simplex line of locks has "a long history with 40 years in the marketplace, Simplex mechanical pushbutton locks continue to be the durable, reliable choice for many facility managers today."

47.     Defendants further represent that the "locks are *dependable*, easy to maintain, and flexible to meet the needs of today's fast-paced environment."

48.     The features Defendants highlight are that these "locks are equipped with PIN

access; mechanical push button lock; *single access code* and are ANSI/BHMA Grade 1 Certified.

49.   Defendants further represent that the Simplex line of locks meet Certification and Standards:

   a.   Americans with Disabilities Act (ADA)

   b.   ANSI/BHMA 156.2, Grade 1 Certification; weather resistant, wear tested for extensive use in indoor and outdoor application

   c.   3-hour UL/ULC fire rating for "A" label doors

50.   Defendants further represent that to maintain secure entranceways "that the Simplex locks are compatible with various exit devices including:

   a.   Arrow S1250

   b.   Arrow S3800

   c.   Corbin Russwin 5200/5200A

   d.   Detex 10/F10

   e.   Dorma 9300/9300F

   f.   Monarch 18R/F-18R

   g.   Precision 21/FL 21

   h.   Sargent 2828

   i.   Sargent 3828

   j.   Sargent 8800

   k.   Sargent 8888

   l.   Von Duprin 22/22F

   m.   Von Duprin 98/98F

   n.   Von Duprin 99/99F

        o.  Yale 7100

51.    Defendants further represent that the Simplex Locks:

        a.  provide "*Security—without the headache of key management.*"

        b.  Mechanical pushbutton locks are a great solution for controlling access between public and private areas.

        c.  The locks are ideal for locations with regular personnel turnover, like data processing centers, employee entrances, research labs, *apartment complexes*, and dormitories.

        d.  They perform nicely in conjunction with other security access systems*, or as stand-alone security alternatives in smaller building applications.*

52.    Defendants market the latest addition to the Simplex line of mechanical pushbutton locks, the Simplex 5000 as offering "unparalleled strength, convenience, and flexibility". This extra heavy-duty lock contains internal drive parts of cast stainless steel and a clutch-free direct-drive design.

53.    Further Defendants represent that the "1000 family offers *a tried and true way to protect your assets. The heavy-duty locks in this family are dependable, reliable, and flexible enough to fit any security need in airports, apartment buildings, college dorms, or manufacturing plants.* Choose from knobs, levers, exit devices, exit PIN code locks, and a variety of other model features in this diverse family of locks. Backed by three-year warranty."

54.    Defendants represent and market that their "7100 and 6200 series *can also be used alone, or with another lock in residential applications.* Optional model features include spring latch and deadbolt. The rugged all-metal construction is weather resistant, *providing added strength and durability*".

55. Included in the locks designed and sold by the Defendants are those produced under the names Unican and Simplex, 1000 Series; 3000 Series; 6200 Series; 7000 Series; and 7100 Series. These locks will be hereinafter referred to individually as the "Lock" and collectively as the "Locks".

56. Defendants claim that their locks are the preferred product of choice for facilities around the globe including healthcare, government, education, residential and commercial applications.

57. As a result of a flaw in the design of the Locks, the Locks can be opened by affixing a magnet to the outside of the Locks, which manipulates the internal mechanism and allows the lock to be opened with ease and without inputting the necessary combination.

58. The pushbutton locks manufactured and sold by Defendants, including but not limited to the Locks can be opened by use of a magnet small enough to fit in the palm of the hand, thus allowing any petty criminal or other interested person easy access to any area whose access is supposed to be restricted by the Locks.

59. Plaintiff Biderman is the owner of a 7000 Series pushbutton lock, which was purchased within the relevant timeframe under the applicable statute of limitations and was installed on doors in his home.

60. Plaintiff Biderman has taken steps to effectuate replacement of the aforementioned defective Locks with non-defective locks at his sole cost and expense.

## IV. CLASS ALLEGATIONS

61. Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action against Defendants on behalf of themselves and a Nationwide Consumer Class. The Class is defined as follows: All persons and entities that purchased any of the Locks. Such persons and entities shall be referred to as "Class Members" or "class members."

Subclasses may be formed as necessary as follows:

      a.   Owners who intend to have the defective Lock replaced;

      b.   Owners who have already replaced the defective Lock;

      c.   Owners who seek to the have the defective Lock repaired;

      d.   Owners who have purchased the defective Lock up to and including the date of class certification.

62.    Excluded from the Class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; persons and entities who have sustained personal injuries or bodily harm as a result of the defects in the Locks; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship to any such persons.

63.    Defendants' alleged actions, inactions, etc. are continuing and ongoing and therefore this Court should certify a class that includes purchasers up to and including the date of class certification.

64.    This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

65.    Numerosity: Plaintiffs do not know the exact size of the class, but it is estimated that it is comprised of hundreds of thousands of persons and entities. The persons and entities in the class are so numerous that the joinder of all such claimants is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts pursuant to Rule 23(a)(1).

66.     Common Questions Predominate: Pursuant to Rule 23(a)(2) and (b)(3), this action involves common questions of law and fact  as to all of the devices in this litigation relating to defectiveness, labeling, warning, failure to recall, knowledge and duty, and these predominate over individual issues. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the class to recover. Among the questions of law and fact common to the class are:

a.     Whether the Locks were defectively designed; and

b.     Whether the Locks are not fit for their intended use; and

c.     Whether the Defendants failed to warn of the ability for the safety mechanism of the Locks to be bypassed; and

d.     Whether the Defendants concealed information and the nature of the defects from the Class Members; and

e.     Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently; and

f.     The amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by Class Members as a result of such wrongdoing;

g.     Whether Class Members are entitled to declaratory, injunctive and other equitable relief and, if so, what is the nature of such relief; and

h.     Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief;

i.     Whether Class members are entitled to disgorgement, etc.

j.     Typicality: Pursuant to Rule 23(a)(3), Plaintiff's claims are typical of the class

because Plaintiffs purchased the defective Locks, which are identical or nearly identical to the Locks purchased by other potential plaintiffs. Thus, Plaintiffs and Class Members sustained the same injuries and damages arising out of the defective design of the Locks. The damages of each Class Member were caused directly by Defendants' wrongful conduct and the design of the Locks; and

      k.     Adequacy: Pursuant to Rule 23(a)(4) and (g)(1), Plaintiffs will fairly and adequately protect the interests of all Class Members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the defective condition of which they complain. Plaintiffs also have no interests that are in conflict with or antagonistic to the interests of Class Members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the class. No conflict of interest exists between Plaintiffs and Class Members hereby, because all questions of law and fact regarding liability of Defendants are common to Class Members and predominate over any individual issues that may exist, such, that by prevailing on their own claims, Plaintiffs necessarily will establish Defendants' liability to all Class Members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

      l.     Superiority: Pursuant to Rules 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impracticable. There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for the Defendants and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. Class action

treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions world engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

## V.     FIRST CAUSE OF ACTION

### Negligence

67.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

68.     Defendants were careless in designing, testing, manufacturing, marketing, distributing and selling the devices with defects.

69.     Defendants had knowledge of said defects yet up until the time of this pleading Defendant have failed in their duty to recall these devices or to alert the public and users of the Locks of the need to replace them and offer to pay for replacement.

70.     At the time Defendants manufactured, distributed, and/or sold the Locks, it owed a non-delegable duty to persons like the named Plaintiffs and the Class and Subclass Members to exercise ordinary and reasonable care to properly design the Locks, and it owes a continuing duty to warn about the problem, and to repair and/or recall its defective Locks.

71.     As a proximate result of the aforementioned negligence of Defendants, Plaintiffs and the Members of the Class and Subclasses suffered and continue to suffer immediate damages and loss in the form of a security breach, loss of sanctity, safety, comfort and security in the knowledge that the that the integrity of Plaintiff's home and property and the homes and

properties of the Class Members could be compromised or breached by an intruder with the intention and purpose to cause physical harm to the residence, property, inhabitants, contents and valuables located thereon, and will be required to pay for additional necessary actions to repair or replace the defective Locks along with additional incidental and related expenses related thereto.

72.     The conduct of Defendants was so willful, wanton, malicious, and reckless and in such disregard for the consequences as to reveal a conscious indifference to the clear risk of death, or serious bodily injury, or property damage and loss, and merits the imposition of punitive damages.

## VI.     SECOND CAUSE OF ACTION

### <u>Strict Product Liability</u>

73.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

74.     Defendants designed, manufactured, marketed, distributed and sold the subject Locks in a condition which rendered them not fit for their intended use due to their ability to be easily bypassed.

75.     Specifically, there is a design defect in the Locks manufactured, distributed, and/or sold by Defendants to middlemen who then resold the Locks to Plaintiffs and the Class Members; that defect existed at the time the Locks were sold to the named Plaintiffs and the class; each of the Locks manifests the defect at the present time; and that defect was the direct and proximate cause of the damages to the named Plaintiffs and the class.

76.     The design defect—which creates an unreasonable risk to Plaintiffs and Plaintiffs' family-- renders Defendants' Locks unfit for their intended purpose — i.e. that of providing a safe-while-accessible home.

77.     Any utility that the design of the Locks may have, is outweighed by the risk associated

with the design.

78.  The aforementioned defects existed when Defendants placed the subject Locks into the stream of commerce and continue to manifest themselves at the present time in each of the Locks.

79.  Damages sustained by Plaintiffs, Class Members and Subclass Members were a proximate result of one or more of the defects.

80.  By engaging in the aforesaid conduct, Defendants are strictly liable to Plaintiff, Class Members and Subclass Members.

## VII.  THIRD CAUSE OF ACTION

### Failure to Warn

81.  Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

82.  Defendants knew or should have known that the Locks contained a non-obvious danger in their ability to be compromised as set forth above. However, Defendants failed to inform Plaintiffs and the members of the Class and Subclasses as to the possibility that the safety features of the Locks could be easily bypassed by the use of readily available magnets.

83.  Had Plaintiffs and members of the Class and Subclasses been warned about the possibility that the safety features of the Locks could be easily bypassed by the use of readily available magnets, they would not have purchased the Locks.

84.  As a direct and proximate result of the Defendants' failure to warn Plaintiffs and members of the Class and Subclass that the safety features of the Locks could be easily bypassed by the use of readily available magnets, Plaintiffs and members of the Class and Subclasses have suffered immediate damages and loss in the form of a security breach, loss of sanctity, safety, comfort and security in the knowledge that the that the integrity of Plaintiff's home and property

and the homes and properties of the Class Members could be compromised or breached by an intruder with the intention and purpose to cause physical harm to the residence, property, inhabitants, contents and valuables located thereon, and will be required to pay for additional necessary actions to repair or replace the defective Locks along with additional incidental and related expenses related thereto.

## VIII.  FOURTH CAUSE OF ACTION

### Breach of Warranty

85.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

86.    Each of the Locks manifests the defect, which renders the Locks not of merchantable quality.

87.    As a direct and proximate result of Defendants' warranty breach, the named Plaintiffs and the Class and Subclass Members were caused to suffer and continue to suffer immediate damages and loss in the form of a security breach, loss of sanctity, safety, comfort and security in the knowledge that the integrity of Plaintiff's home and property and the homes and properties of the Class Members could be compromised or breached by an intruder with the intention and purpose to cause physical harm to the residence, property, inhabitants, contents and valuables located thereon, loss attributable to the decreased value of the product itself, consequential damages in the form of losses sustained by the purchase of the defective product, and will, if they have not yet done so in ignorance of their predicament, have to spend monies to repair and/or replace the Locks.

88.    Defendants have breached the applicable warranties, express and implied, and is therefore liable to Plaintiff, Class Members and Subclass Members.

## IX.    FIFTH CAUSE OF ACTION

### New York Deceptive Sales Practices Act, N.Y. GEN. BUS. § 349 and Violation of State Consumer Protection Statutes

89.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

90.    Defendants knew or should have known that the Locks were defective and easily bypassed and failed to disclose that information to the general public while continuing to sell the Locks and continuing to represent that the Locks were safe for their intended use.

91.    Plaintiffs and the Class Members relied upon the representations and omissions of the Defendants in purchasing the Locks and continued to rely upon the representations and omissions of the Defendants subsequent to their purchase of the Locks.

92.    By concealing this crucial information and subjecting all users of the Locks to security breaches, and by continuing to represent that the Locks was safe and fit for their intended use, Defendants engaged in material, deceptive, consumer-oriented acts, in the conduct of their business that damaged Plaintiffs and all others similarly situated New York citizens in violation of N.Y. Gen. Bus. § 349.

93.    Plaintiffs and all others similarly situated were injured by Defendants' deceptive acts because they unknowingly purchased the Locks, believing that they were safe and fit for their intended purpose when they in fact were not and Plaintiffs incurred expenses that they would otherwise not have incurred.

94.    Subsequent to their purchase of the Locks, Plaintiffs and all others similarly situated continued to believe that the Locks were safe and fit for their intended purpose based upon the representations and omissions of the Defendants.

95.    As a direct and proximate cause of Defendants' violation of N.Y. Gen. Bus. §

18

349, Plaintiffs and all others similarly situated have and continue to suffer immediate damages and loss in the form of a security breach, loss of sanctity, safety, comfort and security in the knowledge that the that the integrity of Plaintiff's home and property and the homes and properties of the Class Members could be compromised or breached by an intruder with the intention and purpose to cause physical harm to the residence, property, inhabitants, contents and valuables located thereon, and have been damaged in an amount that will be proven at trial.

96.    Defendants furthermore engaged in this unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed as follows.

97.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 44-1522, *et seq.*

98.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et seq.*

99.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*

100.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

101.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or has made false representations in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*

102.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*

103.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq.*

104.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. Code § 28-3901, *et seq.*

105.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*

106.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat. §10-1-392, *et seq.*

107.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*

108.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*

109.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS § 50511, *et seq.*

110.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*

111.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code § 714.1 b, *et seq.*

112.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*

113.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*

114.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*

115.     Defendants have engaged in unfair competition or unfair or deceptive acts or

practices in violation Mass Gen L. Ch. 93 A, *et seq.*

116.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*

117.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*

118.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 8.31, *et seq.*

119.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Missouri Stat. § 407.010, *et seq.*

120.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*

121.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*

122.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*

123.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:l, *et seq.*

124.    Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of N.J. Rev. Stat. § 56:8-1, *et seq.*

125.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, *et seq.*

126.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*

127.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*

128.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*

129.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Okla. Stat. 15 § 751, *et seq.*

130.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*

131.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*

132.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq.*

133.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*

134.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. code Laws § 37-24-1, *et seq.*

135.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*

136.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*

137.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code. § 13-11-1, *et seq.*

138.    Defendants have engaged in unfair competition or unfair or deceptive acts or

practices in violation of 9 Vt. § 2451, *et seq.*

139.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*

140.   Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wash. Rev. Code. § 19.86.010, *et seq.*

141.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-101, *et seq.*

142.   The unfair and deceptive acts and practices of Defendants have directly, foreseeably, and proximately caused or will cause damages and injury to Plaintiffs and the members of the Class.

143.   The actions and failures to act of Defendants, and the above described course of fraudulent conduct and fraudulent concealment, constitute acts, uses, or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission of material facts in connection with the sale of merchandise of Defendants in violation of the consumer protection statutes listed above

144.   Plaintiffs and class members relied upon Defendants' misrepresentations and omission in purchasing the Locks and by reason of the unlawful acts engaged in by Defendants, Plaintiffs and the Class have suffered and continue to suffer immediate damages and loss in the form of a security breach, loss of sanctity, safety, comfort and security in the knowledge that the that the integrity of Plaintiff's home and property and the homes and properties of the Class Members could be compromised or breached by an intruder with the intention and purpose to

cause physical harm to the residence, property, inhabitants, contents and valuables located thereon, and ascertainable loss and damages.

145.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class were damaged, and are entitled to compensatory damages, treble damages, attorneys' fees and costs of suit.

## X.   SIXTH CAUSE OF ACTION

### Common Law Fraud

146.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

147.   Defendants have made misrepresentations and omissions of facts material to Plaintiffs' and Class members' decisions to purchase the Locks as set forth in detail above by actively concealing, and causing others to conceal, true information about the nature and implications of the design of the Locks and the fact that their safety features could be easily bypassed by use of readily available magnets.

148.   Defendants knew at the time that it made these misrepresentations and omissions that they were false or that Defendants had failed to disclose facts it was obligated to disclose in order to make its other representations not misleading. Defendants were aware that Plaintiffs and class members would rely on these misrepresentations and omissions, and that such representations were material in the Plaintiffs' and class members' decisions to purchase the Locks.

149.   Plaintiffs and the Class reasonably relied upon Defendants' misrepresentations and omissions of material fact. Plaintiffs and the Class had no reason to doubt the veracity or validity of the information Defendants have promoted through its marketing and sales strategies.

150.   Defendants' misrepresentations and omissions of material fact directly and

proximately caused Plaintiffs' and the Class's damages.

151.    By virtue of the fraud they perpetrated on Plaintiffs and the Class, Defendants are liable to Plaintiffs and the Class for all damages Plaintiffs and the Class have sustained, plus punitive damages, plus the cost of this suit, including attorney's fees.

## XI.    SEVENTH CAUSE OF ACTION

### Unjust Enrichment for Residents of Certain States

152.    Plaintiffs individually, and on behalf of all similarly situated residents of Arkansas; California; Colorado; Connecticut; Hawaii; Illinois; Indiana; Iowa; Michigan; Mississippi; Missouri; Nebraska; New Hampshire; New Jersey; New York; Oklahoma; Vermont; and West Virginia for unjust enrichment (the "18-State Unjust Enrichment Subclass"), incorporate by reference all other paragraphs of this complaint as if fully set forth herein

153.    At all times relevant hereto, Defendants designed, manufactured, produced, marketed and/or sold the Locks.

154.    Plaintiffs and members of the Class and Subclasses conferred upon Defendants, without knowledge that the Locks could be easily bypassed by the use of readily available magnets, payment for such Locks, benefits that were non-gratuitous.

155.    Defendants appreciated, or had knowledge of the non-gratuitous benefits conferred upon them by Plaintiffs and members of the Class.

156.    Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class and Subclasses, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, Plaintiffs and members of the Class and Subclasses were not receiving products of high quality, nature, fitness or value that had been represented by Defendants and reasonable consumers would have expected.

157.    Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiffs and

members of the Class and Subclasses under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

158.    Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class and Subclasses is unjust and inequitable, Plaintiffs and members of the Class and Subclasses are entitled to, and hereby seek disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits in a manner established by the Court.

159.    Plaintiffs, individually, and on behalf of all similarly situated residents of Alaska, District of Columbia, Florida, Georgia, Kansas, Kentucky, Maine, Minnesota, Nevada, New Mexico, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Virginia, Washington and Wisconsin for unjust enrichment (the "21-State Unjust Enrichment Subclass") incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

160.    At all times relevant hereto, Defendants designed, manufactured, produced, marketed and/or sold the Locks.

161.    Plaintiffs and members of the Class and Subclasses conferred upon Defendants, without knowledge that the Locks could be easily bypassed by the use of readily available magnets, payment for such Locks, benefits that were non-gratuitous.

162.    Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class and Subclasses, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, Plaintiffs and members of the Class and Subclasses were not receiving products of high quality, nature, fitness or value that had been represented by Defendants and reasonable consumers would have expected.

163.    Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiffs and members of the Class and Subclasses under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

164.    Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class and Subclasses is unjust and inequitable, Plaintiffs and members of the Class and Subclasses are entitled to, and hereby seek disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits in a manner established by the Court.

## XII.    EIGHTH CAUSE OF ACTION

### Deceit, Fraud And / Or Misrepresentation

165.    Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

166.    The misrepresentations, nondisclosure and/or concealment of material facts made by Defendants to Plaintiffs and the members of the Class, as set forth above, were known by Defendants to be false and material and were intended by the Defendants to mislead Plaintiffs and the members of the Class.

167.    Plaintiffs and the Class were actually misled and deceived and were induced by Defendants to incur expenses they otherwise would not have incurred.

168.    As a result of the conduct of Defendants, Plaintiffs and the class members have been damaged and continue to suffer immediate damages and loss in the form of a security breach, loss of sanctity, safety, comfort and security in the knowledge that the that the integrity of Plaintiff's home and property and the homes and properties of the Class Members could be compromised or breached by an intruder with the intention and purpose to cause physical harm to the residence, property, inhabitants, contents and valuables located thereon, and by having

incurred unwarranted expenses.

## XIII.   NINTH CAUSE OF ACTION

### <u>Negligent Misrepresentation</u>

169.    Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

170.    Defendants had a duty to provide honest and accurate information to Plaintiffs and Class Members to prevent them from unknowingly purchasing the defective Locks.

171.    Defendants concealed all information relating to the defective nature of the Locks and continued to represent that the Locks was fit for their intended use.

172.    Such misrepresentations were and are made by Defendants through the use of terms like "safety, security and convenience" in describing their products, including the Locks, when in fact such representations were false as the Locks could be easily bypassed, and the various marketing materials made available to the Plaintiffs and Class Members by Defendants were also misleading and false.

173.    Defendants knew or in the exercise of reasonable diligence should have known, that the ordinary consumer and customer of Defendants' products would understand Defendants' representations concerning the safety and security of the Locks as being what they purported them to be – safe and secure -- when in fact the Locks provide neither safety nor security, as they can be easily bypassed. Defendants also knew, or in the exercise of reasonable diligence should have known, that the ordinary consumer and customer of Defendants' products would understand and believe these various representations as accurate and reliable and that any other understanding on the part of consumers would not be reasonable given Defendants' representations.

174.    Plaintiffs    and    the    Class    Members    justifiably    relied    on    Defendants'

misrepresentations and made purchase and safety decisions based on those representations.

175.    As a result of the conduct of Defendants, Plaintiffs and the Class Members have been damaged and continue to suffer immediate damages and loss in the form of a security breach, loss of sanctity, safety, comfort and security in the knowledge that the that the integrity of Plaintiff's home and property and the homes and properties of the Class Members could be compromised or breached by an intruder with the intention and purpose to cause physical harm to the residence, property, inhabitants, contents and valuables located thereon, and by having relied on Defendants' misrepresentations with regard to the Locks.

## XIV.   TENTH CAUSE OF ACTION

### <u>Violation of Magnuson-Moss Warranty Act</u>

176.    Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

177.    Plaintiffs and Class and Subclass Members are a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

178.    Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

179.    The Locks are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

180.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

181.    Defendants' express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

182.    The Locks' implied warranties are covered under 15 U.S.C. § 2301(7).

183.    Defendants breached these warranties as described in more detail above, but

generally by not repairing or adjusting the Locks' materials and workmanship defects; providing Locks not in merchantable condition and which present an unreasonable risk of bypass and not fit for the ordinary purpose for which Locks are used; providing Locks that were not fully operational, safe, or reliable; and not curing defects and nonconformities once they were identified.

184.     Plaintiffs and Class and Subclass Members have had sufficient direct dealings with either the Defendants or their agents (locksmith) to establish privity of contract between Plaintiffs and the Class Members. Notwithstanding this, privity is not required in this case because Plaintiffs and Class members are intended third-party beneficiaries of contracts between Defendants and its agents; specifically, they are the intended beneficiaries of Defendants' implied warranties. The agents were not intended to be the ultimate consumers of the Locks and have no rights under the warranty agreements provided with the Locks; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the Locks are dangerous instrumentalities due to the aforementioned defects and nonconformities.

185.     Requiring an informal dispute settlement procedure, or affording Defendants a reasonable opportunity to cure its breach of written warranties, would be unnecessary and futile. At the time of sale or lease of each Lock, Defendants knew, should have known, or were reckless in not knowing of its misrepresentations concerning the Locks' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a

reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

186.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

187.    Plaintiffs and Class and Subclass Members seek to revoke their acceptance of the Locks, or, in the alternative, seek all damages, including diminution in value of their Locks, in an amount to be proven at trial.

## XV.    ELEVENTH CAUSE OF ACTION

### Replacement and Notification Program

188.    Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

189.    Due to the liability of the Defendants as pleaded in the preceding causes of action, one element of its responsibility and of the damages sought in this case is the establishment of a court-approved program funded to pay for the costs of replacing the defective Locks with non-defective locks. These costs include but are not limited to the cost of removal of the defective Lock, cost of a replacement non-defective lock and cost of installation of a non-defective lock.

190.    Plaintiffs additionally seek an order from this Court directing the Defendants to alert every user and every owner of the Locks of the need to remove and replace them.

## XVI.  PRAYER FOR RELIEF

191.    WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, prays for relief as follows:

a.    For an order certifying the Class and appointing Plaintiffs and their counsel to represent the Class; and

b.    For an order awarding Plaintiffs and the Class compensatory damages and

restitution and/or disgorgement and other equitable relief as the Court deems proper; and

   c.  For an order enjoining Defendants from engaging in the wrongful practices described herein; and

   d.  Equitable, injunctive relief in the form of a Notification and Replacement Program, to be established and supervised by the Court and funded by Defendants for the benefit of the Plaintiff. Class Members and Subclass Members; and

   e.  For an order awarding Plaintiffs and the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' and expert-witness fees and other costs as may be deemed applicable; and

   f.  For an order awarding such other and further relief as this Court may deem just and proper.

## XVII.  DEMAND FOR JURY TRIAL

  192. Plaintiffs, and all others similarly situated, hereby demand a trial by jury herein.

DATED:  December 2, 2010

        Respectfully submitted,

    By: _____

       Hunter J. Shkolnik, Esq. (HS4854)
       113 East 37th Street
       New York, New York 10016
       Telephone: (212) 684-1880
       Facsimile: (212) 689-8156